# In the United States Court of Federal Claims

No. 99-310V
September 30, 2009

```
*****************************************
                                        *
ONELIA VALDES,                          *
                                        *
        Petitioner,                     *    Attorney Fees;
                                        *    National Childhood Vaccine Act,
v.                                      *       42 U.S.C. § 300-aa-1 et seq.;
                                        *    Motion For Review;
SECRETARY OF HEALTH                     *    RCFC App. J, Rule 24.
AND HUMAN SERVICES,                     *
                                        *
Respondent.                             *
                                        *
*****************************************
```

**Clifford A. Shoemaker**, Shoemaker & Associates, LLC, Vienna, Virginia, Counsel for Petitioner.

**Althea Walker Davis**, United States Department of Justice, Washington, D.C., Counsel for Respondent.

## MEMORANDUM OPINION AND FINAL ORDER
## REGARDING ATTORNEY FEES AND COSTS

**BRADEN, *Judge.***

On March 21, 2008, the Special Master issued a decision accepting a settlement of this case. Unpublished Decision, *Valdes* v. *Sec'y of Health & Human Servs.*, No. 99-310V (Fed. Cl. Spec. Mstr., March 21, 2008) ("*Valdes I*"). The matter before the court concerns the Special Master's award for Petitioner's attorney's fees and attorney and other costs in *Valdes* v. *Sec'y of Health & Human Servs.*, No. 99-310V, 2009 WL 1456437 (Fed. Cl. Spec. Mstr., Apr. 30, 2009) ("*Valdes II*").

## I.  RELEVANT FACTS AND PROCEDURAL HISTORY.

On May 14, 1999, Petitioner filed a claim for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to 34 ("the Vaccine Act"), as amended, that was assigned to Special Master George L. Hastings, Jr ("the Petition"). The Petition alleged that the hepatitis B vaccine caused Petitioner to develop joint pain and

rheumatoid arthritis.   The Petition was filed by Shoemaker & Associates, that represented Petitioner until the conclusion of this case.[1]

On August 3, 1999, Petitioner's case was reassigned to Chief Special Master Gary J. Golkiewicz.   Between June 10, 2002 and September 5, 2003, Petitioner filed relevant medical records.  No more activity took place until March 2005, because the Chief Special Master was resolving another case alleging that the hepatitis B vaccine caused rheumatoid arthritis.   In *Capizzano* v. *Sec'y of Health & Human Servs.*, No. 00-759V, 2004 WL 1399178 (Fed. Cl. Spec. Mstr. June 8, 2004), the Chief Special Master found that, to receive an award under the Vaccine Act, a Petitioner was required to show the presence of one of four types of evidence: epidemiologic studies; re-challenge; presence of pathological markers or genetic predisposition; or general acceptance in the scientific and medical communities.   Subsequently, the United States Court of Appeals for the Federal Circuit reversed *Capizzano* and held that the Chief Special Master impermissibly raised Petitioner's burden of proof under the Vaccine Act by demanding certain types of evidence to establish causation.   *Capizzano* v. *Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1320 (2006).   The appellate court held that a petitioner was only required to establish by a preponderance of the evidence that the vaccine caused the injury to receive an award under the Vaccine Act.

On July 11, 2006, the Petition in this proceeding was reassigned to Special Master Christian J. Moran ("Special Master").   On March 6, 2007, an expert report was filed and was revised one month later.   Thereafter, the parties engaged in discussions that resulted in a March 4, 2008 settlement agreement.   The Special Master adopted the settlement agreement, issued a March 21, 2008 Decision, and judgment was entered on April 30, 2008.  *Valdes I.*

On November 1, 2008, an Application For Attorneys' Fees And Costs was filed, including fees and costs for the Law Office of David Krathen.   On February 6, 2009, however, Special Master Moran was advised that attempts to obtain information from that firm were not successful and requested that the Application be considered as filed on November 1, 2008.

On February 18, 2009, the Government filed Objections.   On March 2, 2009, Petitioner filed a Reply.   On April 30, 2009, the Special Master issued a decision that found Petitioner's November 1, 2008 Application For Attorney's Fees and Costs was not substantiated and reduced the attorney fees and costs.  *Valdes II* at *1.   On June 1, 2009, Petitioner filed a timely Motion For Review.

---

[1] Prior to filing the Petition, Petitioner was represented by the Law Office of David Krathen in Fort Lauderdale, Florida.   This firm may have collected medical records for Petitioner.   An attorney from this law firm, however, did not appear in this case, nor were any records filed with the Petition.

II.    **THE SPECIAL MASTER'S APRIL 30, 2009 DECISION ON ATTORNEY'S FEES AND COSTS.**

On April 30, 2009, the Special Master awarded Petitioner $28,190.42 for attorney's fees, $10,823.49 for attorney costs, and other costs of $341.59. *Valdes II* at *1.

A.    **The Special Master's Findings Regarding Attorney Fees.**

Petitioner initially requested $32,257.27 in attorney fees. The Government lodged three objections. First, the Government objected to certain time spent working with two non-testifying consultants, Dr. David Geier and Dr. Mark Greenspan. For example, compensation was requested for 0.3 hours (or 18 minutes) in preparing a one sentence motion to file electronically. Petitioner responded that the entry of 0.3 hours was a typographical error and the proper entry should have been 0.1 hours (or 6 minutes). Accordingly, the Special Master reduced the attorney fee award by 0.2 hours or $60.00. *Valdes II* at *2-3.

Second, the Government also challenged attorney fees for attempting to reach one of Petitioner's doctors on New Year's Day 2001. Petitioner agreed to eliminate the 0.1 hours billed. In response, the Special Master reduced attorney's fees by $25.00. *Id.* at 3. The Special Master took this occasion to observe that "the need to change the entry is a problem . . . [a] pattern appears to be developing in which [Petitioner's counsel] creates unreasonable or duplicative entries. Then, when . . . challenged . . . replies that the entry was actually created in error." *Id.* The Special Master further noted that Petitioner's counsel's billing errors had become a pattern, since "errors for Mr. Shoemaker's time are not rare." *Id.* (citing *Savin* v. *Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 317 (2008) (observing that seven different Special Masters had reduced fee and cost requests of this same counsel in at least fourteen different proceedings)). The Special Master also felt compelled to remark that these "time records contain far more mistakes than any other attorney in the Vaccine Program." *Id.* (citing *Saxton* v. *Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (authorizing Special Masters to use their experience to review applications for attorney's fees and costs).

The Special Master warned that "[t]he threat of a penalty may motivate [Petitioner's counsel] to eliminate 'mistakes' in his record keeping. Without the threat of losing some or all of the requested attorney's fees and costs, Mr. Shoemaker has not improved his submissions." *Id.* at 4 n.3. The Special Master recounted that:

> In 2006, Mr. Shoemaker's hourly rate was $300. A one-sentence motion to convert to electronic case filing should take no more than six minutes of an attorney's time (or $30.00). Mr. Shoemaker has claimed 18 minutes, which, given Mr. Shoemaker's hourly rate, is $90.00.

3

At this point there are two possibilities.  First, no one notices that Mr. Shoemaker charged 18 minutes preparing this motion.  Consequently, Mr. Shoemaker is compensated for an, arguably, undeserved $60.

The second possibility is what actually happened in [Petitioner's] case. [The Government] objects to the unreasonable entry.  Mr. Shoemaker, then, modifies his request to only six minutes.  This amount of time is the amount he should have entered originally.  Consequently, Mr. Shoemaker is no worse off than if he had submitted a reasonable request originally.

It is apparent that a third possibility must be explored.  When Mr. Shoemaker submits fee requests that contain erroneous, duplicative, or unreasonable entries, he may lose not just the mistaken entry, but the entire fee application.

*Id.*

The Special Master concluded that, "in light of the continued problems with [Petitioner's counsel's] time records, future errors may not be tolerated without penalty."  *Id.* at 4 (citing *Environmental Defense Fund, Inc.* v. *Reilly*, 1 F.3d 1254, 1258, 1260 (D.C. Cir. 1993) (holding that a court may deny in its entirety a request for an "outrageously unreasonable" amount of attorney's fees, so that Petitioners cannot make "unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.")).

The Special Master also awarded $805.50 for tasks performed by an associate to obtain medical records, but eliminated 4.9 hours at $165.00 per hour, because this work was "much more consistent with the duties of a paralegal" and that "[o]ther law firms routinely use paralegals to obtain medical records . . . [that] shows that [the associate's] skills as an attorney are not required."  *Id.* at 6 (citing *Turpin* v. *Sec'y of Health & Human Servs.*, No. 99-535V, 2008 WL 5747914 *5-7 (Fed. Cl. Spec. Mstr. Dec. 23, 2008) (finding that the collection of medical records is a task that should be performed by paralegals).

## B.   The Special Master's Findings Regarding Expert Witness Costs.

Petitioner initially requested costs for three expert witnesses: $15,200.00 for Dr. Yehuda Shoenfeld; $8,600.00 for Dr. David Geier; and $5,125.00 for Dr. Mark Greenspan.

### 1.   Dr. Yehuda Shoenfeld.

Petitioner requested $15,200.00 for Dr. Yehuda Shoenfeld, for 38 hours of work billed at $400.00 per hour for a report concluding that the hepatitis B vaccine caused rheumatoid arthritis in Petitioner.  Dr. Shoenfeld spent 22 hours reviewing Petitioner's medical records and another

16 hours preparing his report.  The Government objected both to the hourly rate and the amount of time spent by Dr. Shoenfeld.  *Valdes II* at *5-6.

After the Government objected, Petitioner agreed to reduce Dr. Shoenfeld's rate to $350.00 per hour.  *Id.*  In addition, the Special Master found that the time spent by Dr. Shoenfeld was unreasonable, because his time was billed in two large blocks: 22 hours for reviewing Petitioner's medical records; and 16 hours preparing his report, which "prevent[ed] a detailed review" and is "not acceptable."  *Valdes II* at *6.  The Special Master found that "the amount of time in these broad categories is unreasonable," comparing similar cases where Dr. Shoenfeld billed substantially less time for the same tasks.  *Id.*  The Special Master found that a reasonable amount of time for Dr. Shoenfeld's review of Petitioner's medical records was 12 hours and a reasonable amount of time for writing his report was 10 hours, for a total of 22 hours.  *Valdes II* at *6.  The Special Master then multiplied the 22 hours by $350.00 to determine that a reasonable amount of cost for Dr. Shoenfeld was $7,700.00.  *Id.* at *7.  Accordingly, the Special Master reduced Petitioner's requested costs for Dr. Shoenfeld from $15,200.00 to $7,700.00.  *Id.* at 6-7.

### 2.    Dr. David Geier.

Petitioner requested $8,600.00 for Dr. David Geier, for 36.5 hours of work billed at $200.00 per hour and 6.0 hours billed at $250.00 per hour.  *Id.* at *7.[2]  The Government objected to expert fees for Dr. Geier.

The Special Master found that "[r]etaining Dr. Geier was not reasonable."  *Id.*  The Special Master observed that "[Petitioner] fails to explain what in Dr. Geier's background makes him a reasonable person to consult" and that "[a] lengthy explanation is not necessary because many other decisions have refrained from compensating Dr. Geier."  *Id.*  Dr. Geier "does not specialize in immunology, the field best suited to explain how a person might react to an immunization . . . [nor] does [he] specialize in epidemiology, the field best suited to conduct research using databases."  *Id.* at *7 (citing *Sabella* v. *Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 218 (2009) (affirming Special Master's decision not to compensate Dr. Geier)); *see also Ormechea* v. *Sec'y of Health & Human Servs.*, No. 90-1683V, 1992 WL 151816 *7 (Cl. Ct. Spec. Mstr. June 10, 1992) ("Because Dr. Geier has made a profession of testifying in matters to which his professional background . . . is unrelated, his testimony is of limited value.").  Thus, the Special Master rejected, in whole, Petitioner's requested $8,600.00 for Dr. Geier.  The

---

[2] Specifically, the costs requested for Dr. Geier included: 8.5 hours for reviewing medical records; 10.0 hours for researching reactions to the hepatitis B vaccine; 6.0 hours for research using VAERS and CDC (billed at $250.00 per hour); 6.0 hours for a summary of Petitioner's case; 2.0 hours for research regarding potential expert witnesses; 4.0 hours of preparing a publication on adverse reactions to the hepatitis B vaccine; 3.0 hours for summarizing materials for a meeting with Mr. Shoemaker; and 2.0 hours for meeting with Mr. Shoemaker.  *Id.*

Special Master also rejected an additional $1,025.00 requested for time spent by Petitioner's counsel working with Dr. Geier.  *Id.*

### 3.  Dr. Mark Greenspan.

Petitioner also claimed costs for 16.25 hours of work by Dr. Mark Greenspan charged at $300.00 per hour and 0.75 hours for work charged at $325.00 per hour.  *Id.* at *7-8.  Again, the Government objected.  Dr. Greenspan's "primary activities were preparing a summary of [Petitioner's] medical history and working with an unnamed expert."  *Id.* at *7.  The Special Master observed that "the primary problem with Dr. Greenspan's work is that [Petitioner] does not explain why it is necessary" and that Dr. Greenspan's work "appears to duplicate work performed by Mr. Shoemaker, other attorneys working for Mr. Shoemaker, or Dr. Shoenfeld. Without some concrete explanation that Dr. Greenspan did something that was not being done by someone else, [Petitioner] has failed to meet [the] burden of establishing the reasonableness of engaging Dr. Greenspan."  *Valdes II* at *8.  The Special Master cited past cases in which compensation for Dr. Greenspan's work was denied and found that "[Petitioner] has not distinguished these cases from [this] case."  *Id.* (citing *Sabella*, 86 Fed. Cl. at 219 (affirming denial of a portion of Dr. Greenspan's fees)); *Wadie* v. *Sec'y of Health & Human Servs.*, No. 99-493V, 2009 WL 961217 *7-8 (Fed. Cl. Spec. Mstr. Mar. 23, 2009) (denying most of charges sought for Dr. Greenspan's work).  The Special Master also rejected a request of $2,527.85 for Petitioner's counsel's work with Dr. Greenspan, and an associate's work with Dr. Greenspan of $220.50.  *Id.* at *8.

### C.  The Special Master's Findings Regarding Other Costs.

Petitioner also requested reimbursement for other costs of $741.59, including $400.00 for blood samples submitted to William Hildebrandt, Ph.D.  The Special Master awarded Petitioner $341.59, but denied the cost of the blood sample, because Petitioner "failed to meet [Petitioner's] burden of explaining why this cost was reasonable" and "provide[d] no information about Dr. Hildebrandt and why he could advance her case."  *Id.* at *8.  The Special Master observed that "[n]umerous petitioners who claimed that the hepatitis B vaccine harmed them have sought compensation without having an evaluation of their blood performed."  *Id.*

## III.  PETITIONER'S JUNE 1, 2009 MOTION FOR REVIEW.

On June 1, 2009, Petitioner filed a Motion For Review of the April 30, 2009 Special Master's Decision, ("Pet. Mot.") "claiming that the Special Master misapplied the law and abused his discretion, and that many of his reductions were arbitrary and capricious."  Pet. Mot. at 1.  Although "the Vaccine Act grants Special Masters broad authority to make decisions," there are limitations on a Special Master's discretion.  *Id.* at 2.  For example, Vaccine Rule 3(b) "requires that each party have a full and fair opportunity to present its case."  *Id.*  Although Petitioner concedes there is "no binding precedent directly addressing the issues before the [c]ourt," the United States Court of Appeals for the Third Circuit has held that "*sua sponte*

reduction of [a] fee request deprives the fee application of her entitlement to 'offer evidence in support of the reasonableness of [the] request.'" *Id.* at 2 (quoting *Bell* v. *United Princeton Properties*, 884 F.2d 713, 719 (3d Cir. 1989)).

Petitioner also argues that the Special Master "abused his discretion by arbitrarily reducing [P]etitioner's attorney's costs, specifically the billing by the experts and consultants used by [P]etitioner, and that he further misapplied the law with respect to his determination of allowable [P]etitioner's costs, and finally, that his determinations with respect to allowable [P]etitioner's costs is contrary to law, arbitrary and capricious and an abuse of his discretion." *Id.* Specifically, the Special Master abused his discretion by reducing Petitioner's award of costs for Dr. Shoenfeld, because Dr. Shoenfeld is "one of the leading experts in the world on autoimmunity and vaccines causing autoimmune conditions . . . [who has] written over 130 books and 1400 articles [on the topic]." *Id.* at 6. In regard to Dr. Shoenfeld's billing in large blocks, Petitioner explains that "it appears [that] the work he performed was concurrent and organic, rather than separated, *i.e.* his review of the literature was conducted during the course of the review of the records and therefore he was unable to 'break it up.'" *Id.* at 8. More to the point, time spent reviewing medical records, was reasonable and "the Special Master arbitrarily disregarded that . . . [this time] also includes a review of the substantial literature referenced in Dr. Shoenfeld's [R]eport." *Id.* at 4. Significantly, the Special Master disregarded the fact that Dr. Shoenfeld reviewed Petitioner's *complete* medical records but only took into account Dr. Shoenfeld's review of part of Petitioner's medical records. *Id.* The Special Master arbitrarily disregarded the fact that Dr. Shoenfeld reviewed 68 "relevant" articles to prepare his Report. *Id.* Further, the Special Master disregarded the first 10 pages of Dr. Shoenfeld's Report as a gratuitous "chronology of [Petitioner's] [sic] medical history," although this was a necessary predicate for his opinion. *Id.* at 5-6 ("Dr. Shoenfeld *must* lay out the relevant facts in the medical record in order to establish a plausible theory, a logical sequence of cause and effect and an appropriate temporal association."). Lastly, the Special Master arbitrarily disregarded that Dr. Shoenfeld is "clearly one of the leading experts in the world on autoimmunity and vaccines causing autoimmune conditions" and that "[c]ontinued treatment of experts of this caliber by Special Masters . . . will have a chilling effect on the ability of any petitioners in the future to find qualified experts willing to review their claims." *Id.* at 6-7.

Likewise, Petitioner challenges the Special Master's determination that Dr. Geier's work was unnecessary, because that work was necessary to "prepar[e] a detailed overview of the medical literature existing at the time as they related to [Petitioner's] injury. At [that] time, Vaccine Court proceedings involving hepatitis B cases were in their infancy. It was customary to allow petitioners to 'build' their cases," by consulting experts like Dr. Geier. *Id.* at 7. Petitioner noted similar cases where other Petitioners were compensated for Dr. Geier's work. *Id.* (citing *Ray* v. *Sec'y of Health & Human Servs.*, No. 04-184V, 2006 WL 1006587 (Fed. Cl. Spec. Mstr. Mar. 30, 2006)). In this case, however, "[t]he Special Master . . . failed to undertake even a superficial analysis of the reasonableness of Dr. Geier's bill," but instead engaged in "an *ad hominem* attack on Dr. Geier." *Id.* In particular, the Special Master's determination that Dr. Geier's qualifications as a geneticist did not make him a reasonable person to consult in an

immunology case was arbitrary and capricious, because Dr. Geier is board certified in epidemiology, a field in which even the Special Master conceded would be well-suited for an expert in Petitioner's case. *Id.* at 8 n.6.

In addition, Petitioner challenges the Special Master's determination that Dr. Greenspan's work was unnecessary in justifying denial of his costs. Petitioner counters that Dr. Greenspan was necessary "to perform an assessment with respect to the potential expertise required to prove causation in [Petitioner's] case." *Id.* at 9-10. Instead, the Special Master arbitrarily cited to two of his decisions that denied compensation for Dr. Greenspan, which "[raises] a not-unreasonable argument that . . . the Special Master simply does not like Dr. Greenspan." *Id.* at 9. By denying all costs for Dr. Greenspan, as well as all of Petitioner's counsel's hours related to Dr. Greenspan, the Special Master "arbitrarily and capriciously denied all compensation to Dr. Greenspan, and failed to provide more than a superficial basis for that denial." *Id.* at 10. "Given the blanket rejections issued by the Special Master, it is unclear that [Petitioner] could ever justify engaging any outside help beyond the barest minimum." *Id.* Therefore, for [Petitioner's counsel], "future zealous representation of their clients is likely to mean *pro bono* representation of their clients." *Id.* at 11.

Finally, Petitioner objects to the Special Master's denial of attorney's fees and costs for Petitioner's counsel's associate. Petitioner argues that "[t]he Special Master, after determining that certain work performed by [the associate] was more properly billed as paralegal time, arbitrarily and capriciously denied the billing in total, rather than adjusting the hourly rates to reflect his determination." *Id.* Even if the Special Master was correct, Petitioner should at least be compensated at a paralegal hourly rate. *Id.* at 12.

## IV.    THE GOVERNMENT'S RESPONSE.

On July 1, 2009, the Government filed a Memorandum In Response To Petitioner's Motion For Review ("Gov't Memo."). The Government argues that the Special Master: acted within his discretion in awarding less for attorney's costs than the amount requested by Petitioner; and appropriately found that certain work performed by [the associate] was not compensable. Gov't Memo. at 5, 15. The Special Master "properly relied on his experience" and "clearly articulated the basis for his Decision and provided sound reasoning for his conclusions." *Id.* at 4. Further, "[P]etitioner's motion lacks any relevant case law to support [Petitioner's] arguments that the special master's actions in this case were improper." *Id.* at 4.

Moreover, Petitioner's misguided reliance on *Bell* was discredited in *Savin* v. *Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313 (2008), wherein Judge Allegra observed that:

> *Bell* may be read as merely indicating that a court may not *sua sponte* reduce a fee request if it lacks any factual or experiential foundation upon which to do so . . . Any broader reading of the Third Circuit's opinion in *Bell* - for example, the one petitioners offer - collides with the fact that virtually every other circuit

has held that a judge has an independent responsibility to assess the reasonableness of claimed fees and costs, whether *vel non* particular items are challenged.

*Id.* at 318.

As for the Special Master's denial of costs for Dr. Greenspan, Petitioner "failed to provide any explanation that established a rational basis for granting compensation for the time [Dr. Greenspan] billed" and Dr. Greenspan's work was duplicative. *Id.* at 8. The Special Master thus reasonably concluded that the Petitioner did not meet the "burden of showing the reasonableness of [Dr. Greenspan's] activities on a line-by-line basis." *Id.* Further, "[P]etitioner . . . offered no support for the notion that the [S]pecial [M]aster [] engaged in unfair treatment of Dr. Greenspan." *Id.* at 9. The Special Master "articulated specific reasons for his denial of fees for Dr. Greenspan . . . analyzed petitioner's findings in support of [petitioner's] Application, noted petitioner's lack of substantiation for Dr. Greenspan's services . . . , and made a reasoned determination that an award for Dr. Greenspan's fees was not appropriate here." *Id.* at 9-10. Therefore, the Special Master "properly exercised his discretion to deny fees [for Dr. Greenspan]." *Id.* at 10.

The Special Master's denial of Dr. Geier's costs also was appropriate, because "the [S]pecial [M]aster provided specific reasons for rejecting compensation for Dr. Geier, based in large part upon [P]etitioner's failure to provide sufficient information to show the reasonableness of his services as a consultant." *Id.* at 11. The Petitioner's contention that the Special Master "simply did not like Dr. Geier" is unsubstantiated, because "the Special Master's decision does not contain any personal attacks on Dr. Geier." *Id.* at 10. The Petitioner "failed to meet [the] burden of providing more than superficial evidence (*i.e.*, more than a simple invoice) without further explanation to justify the reasonableness of such services." *Id.* at 11.

The Special Master's review of Dr. Shoenfeld's costs likewise "demonstrates the appropriate exercise of discretion as well as a reasoned analysis of the evidence. [He] relied on established case law regarding the inappropriateness of billing in large blocks and noted that it was incumbent on [P]etitioner's counsel, who has extensive experience in the Vaccine program, to explain to Dr. Shoenfeld the requirements for generating an acceptable invoice." *Id.* at 14. Further, "the [S]pecial [M]aster combined his knowledge of the case with his experience in the Vaccine Program [to determine] the reasonable number of hours for Dr. Shoenfeld's work." *Id.* Petitioner's contention that Dr. Shoenfeld's review of medical literature substantiated the large number of hours billed is unreasonable, because "it is not clear whether Dr. Shoenfeld performed research in order to locate the medical literature, whether he was already in possession of and familiar with the medical literature, or whether the literature he cited regarding the hepatitis C virus had any relevance to this case." *Id.* at 15.

Petitioner's counsel's billing of certain fees as an associate also were not justified and the Special Master's "actions in this regard are an appropriate exercise of his discretion, based on his

knowledge and experience." *Id.* at 16.  Since "[S]pecial [M]asters are given broad discretion in calculating fee and cost awards," the denial of fees for the associate was within his discretion. *Id.* (quoting *Wasson* v. *Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (1991)).

## V.   STANDARD OF REVIEW.

The section of the Vaccine Act that authorizes the award of attorney's fees and costs provides:

> In awarding compensation on a petition filed under section 300aa-11 of this title the special master or court shall also award as part of such compensation an amount to cover-
>
> (A) reasonable attorney's fees, and
>
> (B) other costs,
>
> incurred in any proceeding on such petition.  If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorney's fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

42 U.S.C. § 300aa-15(e)(1).

If the petition for compensation is successful, the Special Master is required to award reasonable fees and costs.  42 U.S.C. § 300aa-15(e)(1).  The determination of the amount of reasonable attorney's fees, however, is within the Special Master's discretion.  *Hines* v. *Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("the reviewing court must grant the [S]pecial [M]aster wide latitude in determining the reasonableness of both attorneys' fees and costs.").  If the petition for compensation is denied, the Special Master "may" award reasonable fees and costs "only in cases where it can be determined that the petitioner brought the case in good faith, and that the basis for the claim was reasonable."  *Perreira* v. *Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 31 (1992) (citing 42 U.S.C. § 300aa-15(e)(1).  Therefore, under the Vaccine Act, the Special Master clearly has discretion in making such an award.

## VI.   THE COURT'S RESOLUTION

It is well established that the Special Master has broad discretion to determine reasonable attorney's fees and costs.  *Saxton*, 3 F.3d at 1520-22.

But Petitioner argues that the broad discretion of the Special Master is limited, because the "*sua sponte* reduction of [a] fee request deprives the fee applicant of her entitlement to 'offer evidence in support of the reasonableness of her request.'" Pet. Mot. at 2 (quoting *Bell*, 884 F.2d at 719). There are several problems with Petitioner's argument. First, the United States Supreme Court has established that the trial court has broad discretion to reduce requests for fees and costs. *Hensley* v. *Eckerhart*, 461 U.S. 424, 437 (1983) (observing that the trial court "has discretion in determining the amount of a fee award. This is appropriate in view of the [trial forum's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."). Second, as Judge Allegra observed, *Bell* "may be read as merely indicating that a court may not *sua sponte* reduce a fee request if it lacks any factual or experiential foundation upon which to do so." *Savin*, 85 Fed. Cl. at 318. In this proceeding, however, Petitioner was not deprived of the right to offer evidence in support of a fee request. On November 1, 2008, Petitioner filed an Application For Attorneys' Fees And Costs, and on June 1, 2009, Petitioner filed a Motion For Review of the Special Master's decision. Accordingly, Petitioner has received a fair opportunity to justify the attorney's fees and costs requested.

The Special Master also acted within his discretion in reducing costs for Dr. Shoenfeld's Report, because Dr. Shoenfeld billed his time in two large blocks preventing "a detailed review." *Valdes II* at *6. The Special Master relied on established case law regarding the inappropriateness of billing in large blocks. For example, in *Broekelschen* v. *Sec'y of Health & Human Servs.*, No. 07-137V, 2008 WL 5456319 *4-5 (Fed. Cl. Spec. Mstr. Dec. 17, 2008), the Special Master observed that "[e]ach task should have its own line entry indicating the amount of time spent on that task. Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request." *Id*. at *4-5.

The Special Master also appropriately relied on his experience with the Vaccine Program in determining that the amount of Dr. Shoenfeld's hours was unreasonable. *Saxton*, 3 F.3d at 1520-22. Moreover, as the Government noted, the "[P]etitioner arguably overstates the time necessary for review of the medical literature Dr. Shoenfeld cited. A review of Dr. Shoenfeld's report and references reveals that the first 20 articles cited were authored by Dr. Shoenfeld, and that the first 14 articles were cited in support of his knowledge of vaccinations and autoimmunity." Gov't Mot. at 14 n.15. Therefore, the Special Master properly relied on his experience in the Vaccine Program, in concluding that the review of the medical literature and records did not substantiate an award of 22 hours for Dr. Shoenfeld's time.

In addition, it was within the Special Master discretion to deny Petitioner's costs for retaining Dr. Geier. Dr. Geier's qualifications and credibility in Vaccine Act cases have been criticized. *Sabella*, 2009 WL 539880, at *20. For example, in *Sabella*, the United States Court of Federal Claims observed that "Dr. Geier has been roundly criticized by special masters in vaccine cases as being unqualified to testify about many vaccine injuries," and that "special masters have tended to be highly critical of Dr. Geier's testimony." *Id.* The court, however, is concerned with the Special Master's decision to deny all of the costs requested for Dr. Geier's

work, particularly since Petitioner received satisfaction through settlement. In parity with the treatment of Dr. Shoenfeld, the court finds a 50% reduction of Dr. Geier's costs more reasonable. In so finding, the court expects that any future costs requested by Dr. Geier in other cases directly to respond to concerns lodged by the Special Masters and the court.

The Special Master also was within his discretion to deny costs for Dr. Greenspan, because his work was duplicative. The United States Supreme Court has held that counsel should "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433. The Special Master also found that Petitioner did not meet the burden of explaining why Dr. Greenspan's work was necessary. *Valdes II* at *8. Because there was no persuasive explanation why Dr. Greenspan's work was not duplicative, denial of costs was within the Special Master's discretion. As with Dr. Shoenfeld and Dr. Geier, the court finds that a 50% reduction of costs associated with Dr. Greenspan are warranted, given the settlement achieved.

Likewise, the Special Master exercised appropriate discretion in denying requested costs for work performed by Petitioner's counsel's associate. The Special Master appropriately relied on his experience with the Vaccine Program to determine that the associate's time spent obtaining medical records was more consistent with paralegal duties. *Id.* at *6. The Special Master, however, abused his discretion in not approving the fee request at a paralegal rate.

Finally, the Special Master did not exercise appropriate discretion in denying Petitioner's $400.00 for sending blood samples to William Hildebrandt, Ph.D. Although other petitioners may have brought claims without having a blood test, the test was not unreasonable nor the cost excessive.

## VII.   CONCLUSION

For the reasons discussed herein, the Petitioner's Motion For Review is granted in part and denied in part. The April 30, 2009 Decision of the Special Master is vacated and remanded for the issuance of an award consistent with this Memorandum Opinion and Final Order.

**IT IS SO ORDERED**.

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**